Case 2:18-cv-00432   Document 12   Filed on 04/01/19 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
April 01, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UVALDO GUZMAN, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:18-CV-432 |
| § | |
| WARDEN FUENTEZ, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION TO DISMISS CASE

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff Uvaldo Guzman's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's claim for money damages against Defendants in their official capacities be dismissed as barred by

the Eleventh Amendment. It is respectfully recommended further that all of Plaintiff's claims against Defendants be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). Lastly, it is respectfully recommended that the dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g).

## I. JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas. The facts giving rise to Plaintiff's claims in this civil rights action occurred in connection with his assignment to the McConnell Unit. Plaintiff filed his original complaint on November 29, 2018, naming the following defendants: (1) Head Warden Fuentez; (2) Assistant Warden Fernandez; (3) Lieutenant Skinner C. Sturgis; and (4) Sergeant Tommy L. West. Plaintiff alleges that Defendants have acted with deliberate indifference to his health and have retaliated against him. He does not indicate whether he sues each defendant in their individual capacities, their official capacities, or both. Plaintiff seeks injunctive and monetary relief.

On February 28, 2019, a *Spears*[1] hearing was conducted where Plaintiff was given an opportunity to explain his claims. The following allegations were made in Plaintiff's original complaint (D.E. 1) or at the hearing.

At all relevant times, Plaintiff was housed in administrative segregation in a single cell. His placement in administrative segregation resulted from being charged with assaulting a TDCJ officer at another prison unit. Early in the morning on May 23, 2018, Plaintiff met with his attorney's investigator to discuss the pending charge. Because both Plaintiff and the investigator have bad hearing, a prison official moved Plaintiff to a room containing seven shakedown cages. The room containing the cages is located in the same building as Plaintiff's cell.

Plaintiff was placed into one of the shakedown cages by Lt. Sturgis while the investigator remained on the outside. Plaintiff described the cage as seven feet tall with just enough room for one person to spread out his arms. The cage contains one place to sit down, and the meshing wire allows the occupant to see through and to communicate to people on the outside. The cage contains no running water and no toilet.

Only one door leads into the room containing the shakedown cages, and there were no cameras placed inside the room. The door is locked by a regular key. According to Plaintiff, a camera in the hallway watches the door leading into the room containing the shakedown cages. Plaintiff did not know whether the camera watching the door was

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

monitored by a picket officer.  No other person was inside any other cage during the time Plaintiff was locked in the shakedown cage.

Plaintiff's meeting with his attorney's investigator began at 9:00 a.m.  When Plaintiff met with the investigator, the door to the room was open.  Plaintiff's meeting with his investigator took around forty minutes, at which time the investigator left through the open door.

Plaintiff remained locked in the shakedown cage after the investigator left.  Lt. Sturgis entered the room sometime after lunch.  Plaintiff informed Lt. Sturgis that he was done and would like to return to his cell.  Lt. Sturgis responded that he would be right back to take Plaintiff to his cell.  Lt. Sturgis further informed Plaintiff that the investigator had failed to inform him that the meeting was completed.

Sometime later that day, Sgt. West entered the room.  Sgt. West informed Plaintiff that the officers did not know his meeting was over with the investigator and that he would be right back to return Plaintiff to his cell.  Plaintiff never saw Sgt. West again during the rest of the time he was inside the cage.  Lt. Sturgis returned to the room three more times every two hours or so.  Lt. Sturgis made fun of Plaintiff, saying to Plaintiff that he was going to stay in the cage and that Lt. Sturgis had Plaintiff right where he wanted him.

Plaintiff was aware that people were walking by the door all day long.  Plaintiff yelled out a couple of times but nobody answered from the hallway.  He also feel asleep at various times during his stay in the cage.  The door remained open until shift change which occurred around 6:00 p.m.  An inmate walking down the hall way closed the door.

Plaintiff was never offered water or food by Lt. Sturgis and Sgt. West. Plaintiff had no access to bathroom facilities. After shift change, Plaintiff did not see anyone again until he was released from the cage.

During his stay in the cage, Plaintiff went to the bathroom one time in his pants. Plaintiff estimates there were two or three roster counts in his cell during the time he languished in the shakedown cage. Plaintiff ultimately was released from the cage at 4:00 a.m. the next morning, which meant that he spent approximately nineteen hours in the cage. Several officers participated in releasing Plaintiff from the cage. When asked why they left Plaintiff in the cage, Lt. Sturgis and Sgt. West said they were unaware that Plaintiff was in the cage. During the time Plaintiff was left in the cage, he had no access to water, food, or the bathroom. Plaintiff missed three meals while in the cage. Plaintiff testified that he felt fine physically when he was released. He was immediately taken to the infirmary where he was given water to drink for possible dehydration.

Plaintiff confirmed at the *Spears* hearing that Warden Fuentes and Assistant Warden Fernandez had no personal involvement in his stay in the cage. Plaintiff believes, however, that these supervisory defendants should be held accountable. Plaintiff also could not allege specific facts at the *Spears* hearing in support of a retaliation claim. He speculated that perhaps Lt. Sturgis and Sgt. West were trying to punish Plaintiff for having been charged with assaulting a TDCJ officer.

Because he cannot read or write, Plaintiff enlisted the aid of another inmate to draft his complaint. During the course of the *Spears* hearing, the undersigned provided Plaintiff the opportunity to file an amended complaint to clarify his relief sought.

Plaintiff indicated that it would be fine to have that opportunity. Plaintiff, however, has not filed an amended complaint. Because Plaintiff cannot read or write and has had trouble enlisting the aid of prison staff and other inmates, the undersigned informed Plaintiff that he will be allowed three months, instead of the typical fourteen days, to file any objections he may have to this Memorandum and Recommendation.[2]

### III.   LEGAL STANDARD.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an

---

[2] The undersigned further informed Plaintiff that he should notify the Court in the event he is unable to acquire help in preparing court documents from both the law library staff and other inmates.

indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

## IV. DISCUSSION.

### A. Official Capacity Claims

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Accordingly, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice.

### B. Supervisory Defendants

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

Accepting Plaintiff's allegations as true, they indicate that Warden Fuentez and Assistant Warden Fernandez neither had any personal involvement nor any knowledge of the events of May 23, 2018, where Plaintiff was locked in a shakedown cage for nineteen hours. Plaintiff, therefore, has failed to allege any plausible claims against Defendants Fuentez and Fernandez in their roles as supervisory officials. Accordingly, it is respectfully recommended that Plaintiff's claims against these supervisory officials be dismissed with prejudice.

### C. Deliberate Indifference to Health and Safety

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the

Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

Prison officials are required to must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. "Even proof of gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)).[3]

In accessing prisoner allegations of unconstitutional conditions of confinement, the Supreme Court has noted that some complained-of conditions amount to no more than "a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright,* 430 U.S. 651, 674 (1977). Moreover, the Court has further explained that it is necessary to consider the duration of the plaintiff's exposure to the complained-of condition. See *Hutto v. Finney,* 437 U.S. 678, 686–87 (1978).

Following this guidance, the Fifth Circuit Court of Appeals and other circuit courts have recognized that a filthy cell may be tolerable and not an Eighth Amendment violation for a few days but intolerably cruel and unusual for a time period of weeks or months. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hutto*, 437 U.S. at 686-87); *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989) (citing *Hutto,* 437 U.S. at 687); *see also White v. Nix,* 7 F.3d 120, 121 (8th Cir.1993) (a prisoner confined to an allegedly unsanitary cell for eleven days could not prove an Eighth Amendment violation due to "relative brevity" of his stay); *Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th

---

[3] The Fifth Circuit has clarified that "gross negligence . . . is a heightened degree of negligence, while [deliberate indifference] is a lesser form of intent." *Whitley*, 726 F.3d at 641 (internal quotations and citation omitted).

Cir.1988) (filthy, roach-infested cell for five days does not amount to constitutional violation). However, there is no exact time calculation, and with certain conditions, or combinations of conditions, the short duration of the exposure does not eliminate the violation. *See, e.g., McBride v. Deer,* 240 F.3d 1287, 1291–92 (10th Cir. 2001) (finding an Eighth Amendment violation where a prisoner was forced to live in a feces-covered cell for three days); *LaReau v. MacDougall,* 473 F.2d 974, 978 (2d Cir. 1972) (prisoner's Eighth Amendment rights were violated where he was forced to "live, eat, and perhaps sleep in close confines with his own human waste" for five days).

Plaintiff claims that Lt. Sturgis and Sgt. West acted with deliberate indifference to his health when they left him locked in the shakedown cage for nineteen hours. When accepting Plaintiff's allegations as true, however, they fail to state that he was exposed to a substantial risk of serious harm.

Plaintiff's allegations reflect that he spent a relatively short period of time, less than a day, in the shakedown cage without access to water, food, or the bathroom. While Plaintiff was no doubt in discomfort during his time in the cage for less than a day, his allegations fail to indicate that he suffered more than a *de minimis* level of imposition or otherwise to amount to an Eighth Amendment violation. *See Smith v. Copeland,* 87 F.3d 265, 267-68 (8th Cir.1996) (granting defendants judgment as a matter of law and finding no constitutional violation where detainee was held in solitary confinement without clothing or bedding, was denied food and water, and was exposed to raw sewage in his cell for four days because Smith was not exposed to disease, he did not suffer adverse effects from the exposure, and his exposure to the sewage was for a limited period of

time); *Pierron v. L.P.D.C.*, No. 16-01746, 2017 WL 4990551, at *3 (E.D. La. Feb. 9, 2017) (concluding that prisoner's allegations that he was held in a segregation cell for over 24 hours without water to drink failed to state a deliberate indifference claim). *Garcia v. Currie*, No. 2:13-CV-226, 2014 WL 7157430, *9-11 (S.D. Tex. Dec. 15, 2014) (finding no Eighth Amendment violation where prisoner was held in a dry cell for 44 hours without a mattress, blanket, proper food, water and necessary hygiene materials). Accordingly, it is respectfully recommended that Plaintiff's deliberate indifference claims against Lt. Sturgis and Sgt. West be dismissed as frivolous and/or for failure to state a claim for relief.[4]

### D. Retaliation

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris,* 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for

---

[4] Because Plaintiff's allegations fail to satisfy the objective prong of the deliberate indifference test, it is unnecessary to consider the subjective prong of the deliberate test -- whether Lt. Sturgis and Sgt. West acted with the requisite deliberate indifference to Plaintiff's health.

exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred.

*Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Plaintiff claims in his original complaint that Lt. Sturgis and Sgt. West retaliated against him by leaving in the shakedown cage for nineteen hours. While providing no specific facts at the *Spears* hearing, Plaintiff speculated that perhaps Lt. Sturgis and Sgt. West were trying to punish Plaintiff since Plaintiff had been charged with assaulting a TDCJ officer. Plaintiff's allegations of retaliation in this instance are purely conclusory. They merely reflect his personal belief he may have been the victim of retaliation by Lt.. Sturgis and Sgt. West. Plaintiff alleges no specific facts to indicate that, but for some retaliatory motive, the incident involving the shakedown cage would not have occurred. Accordingly, it is respectfully recommended that Plaintiff's retaliation claims against Lt. Sturgis and Sgt. West be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

## V. CONCLUSION.

For the reasons stated above, it is respectfully recommended that Plaintiff's claim for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment. It is respectfully recommended further that all of Plaintiff's claims against Defendants be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). Lastly, it is respectfully recommended that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court forward a copy of this Memorandum and

Recommendation to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted this 1st day of April, 2019.

*[signature]*
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).