IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UVALDO GUZMAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:18-CV-00432 |
| | § | |
| WARDEN FUENTEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

The Court is in receipt of Magistrate Judge B. Janice Ellington's Memorandum and Recommendation to Dismiss Case ("M&R"), Dkt. No. 12. The Court is also in receipt of Plaintiff Uvaldo Guzman's ("Guzman") Objections to the M&R, Dkt. No. 13. The Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** in Magistrate Judge's Memorandum and Recommendation.

### I. Background

Guzman is incarcerated in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville Texas. Dkt. No. 1. In his complaint Guzman alleges claims against Head Warden Fuentez; Assistant Warden Fernandez; Lieutenant Skinner C. Sturgis ("Sturgis"); and Sergeant Tommy L. West ("West"). *Id.* at 1. He alleges deliberate indifference and retaliation claims against Defendants. *Id.*; Dkt. No. 12 at 2. The M&R adequately summarizes the facts underlying his complaint:

> At all relevant times, Plaintiff was housed in administrative segregation in a single cell. His placement in administrative segregation resulted from being charged with assaulting a TDCJ officer at another prison unit. Early in the morning on May 23, 2018, Plaintiff met with his attorney's investigator to discuss the pending charge. Because both Plaintiff and the investigator have bad hearing, a prison official moved Plaintiff to a room containing seven shakedown cages. The room containing the cages is located in the same building as Plaintiff's cell.
> Plaintiff was placed into one of the shakedown cages by Lt. Sturgis while the investigator remained on the outside. Plaintiff described the cage as seven feet

tall with just enough room for one person to spread out his arms. The cage contains one place to sit down, and the meshing wire allows the occupant to see through and to communicate to people on the outside. The cage contains no running water and no toilet.

Only one door leads into the room containing the shakedown cages, and there were no cameras placed inside the room. The door is locked by a regular key. According to Plaintiff, a camera in the hallway watches the door leading into the room containing the shakedown cages. Plaintiff did not know whether the camera watching the door was monitored by a picket officer. No other person was inside any other cage during the time Plaintiff was locked in the shakedown cage.

Plaintiff's meeting with his attorney's investigator began at 9:00 a.m. When Plaintiff met with the investigator, the door to the room was open. Plaintiff's meeting with his investigator took around forty minutes, at which time the investigator left through the open door.

Plaintiff remained locked in the shakedown cage after the investigator left. Lt. Sturgis entered the room sometime after lunch. Plaintiff informed Lt. Sturgis that he was done and would like to return to his cell. Lt. Sturgis responded that he would be right back to take Plaintiff to his cell. Lt. Sturgis further informed Plaintiff that the investigator had failed to inform him that the meeting was completed.

Sometime later that day, Sgt. West entered the room. Sgt. West informed Plaintiff that the officers did not know his meeting was over with the investigator and that he would be right back to return Plaintiff to his cell. Plaintiff never saw Sgt. West again during the rest of the time he was inside the cage. Lt. Sturgis returned to the room three more times every two hours or so. Lt. Sturgis made fun of Plaintiff, saying to Plaintiff that he was going to stay in the cage and that Lt. Sturgis had Plaintiff right where he wanted him.

Plaintiff was aware that people were walking by the door all day long. Plaintiff yelled out a couple of times but nobody answered from the hallway. He also feel asleep at various times during his stay in the cage. The door remained open until shift change which occurred around 6:00 p.m. An inmate walking down the hall way closed the door Plaintiff was never offered water or food by Lt. Sturgis and Sgt. West. Plaintiff had no access to bathroom facilities. After shift change, Plaintiff did not see anyone again until he was released from the cage.

During his stay in the cage, Plaintiff went to the bathroom one time in his pants. Plaintiff estimates there were two or three roster counts in his cell during the time he languished in the shakedown cage. Plaintiff ultimately was released from the cage at 4:00 a.m. the next morning, which meant that he spent approximately nineteen hours in the cage. Several officers participated in releasing Plaintiff from the cage. When asked why they left Plaintiff in the cage, Lt. Sturgis and Sgt. West said they were unaware that Plaintiff was in the cage. During the time Plaintiff was left in the cage, he had no access to water, food, or the bathroom. Plaintiff missed three meals while in the cage. Plaintiff testified

that he felt fine physically when he was released. He was immediately taken to the infirmary where he was given water to drink for possible dehydration. Dkt. No. 12 at 2-5.

The Magistrate Judge issued her M&R on April 1, 2019 as a frivolousness screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C.A. § 1997e; 28 U.S.C. § 1915(e)(2)(B). The Magistrate Judge recommends dismissing Guzman's claims against Defendants in their official capacities as barred by the Eleventh Amendment. Dkt. No. 12 at 1-2. The Magistrate Judge also recommends dismissing all of Guzman's other claims for failure to state and claim and/or frivolousness and to count the dismissal as a "strike." *Id.*

Guzman is illiterate but through the assistance of another incarcerated person he objects to the M&R on the grounds that the Magistrate Judge has misinterpreted the severity of the harm that occurred; that Guzman has alleged facts which demonstrate retaliation and a deliberate indifference by Defendants to his 19-hour containment in the cell. Dkt No. 13 at 2.

## II. Analysis

The M&R correctly states the applicable legal standard.

> "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth,* 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678. The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir. 2002). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

Dkt. No. 12 at 6-7.

### a. Deliberate indifference

The M&R states the law around a deliberate indifference claim as follows:

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992). An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 [sic] and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)). The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. "Even proof of gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)). In accessing prisoner allegations of unconstitutional conditions of confinement, the Supreme Court has noted that some complained-of conditions amount to no more than "a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). Moreover, the Court has further explained that it is necessary to consider the duration of the plaintiff's exposure to the complained-of condition. *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978).

Following this guidance, the Fifth Circuit Court of Appeals and other circuit courts have recognized that a filthy cell may be tolerable and not an Eighth

> Amendment violation for a few days but intolerably cruel and unusual for a time period of weeks or months. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hutto*, 437 U.S. at 686-87); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.1989) (citing *Hutto*, 437 U.S. at 687); *see also White v. Nix*, 7 F.3d 120, 121 (8th Cir.1993) (a prisoner confined to an allegedly unsanitary cell for eleven days could not prove an Eighth Amendment violation due to "relative brevity" of his stay); *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir.1988) (filthy, roach-infested cell for five days does not amount to constitutional violation). However, there is no exact time calculation, and with certain conditions, or combinations of conditions, the short duration of the exposure does not eliminate the violation. *See, e.g., McBride v. Deer*, 240 F.3d 1287, 1291–92 (10th Cir. 2001) (finding an Eighth Amendment violation where a prisoner was forced to live in a feces-covered cell for three days); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner's Eighth Amendment rights were violated where he was forced to "live, eat, and perhaps sleep in close confines with his own human waste" for five days).

Dkt. No. 12 at 9-10.

*Domino* is of no moment for the screening of Plaintiff's case. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). *Domino* regards a summary judgment motion, it does not create a higher standard for the statement of a claim. *Id. Smith v. Copeland* is also off point as it regards a summary judgment motion and facts involving an inmate who had access to a toilet and refused to clean up his own cell. *Smith v. Copeland*, 87 F.3d 265, 267 (8th Cir. 1996). Similarly, *Pierron* involved an inmate who had access to a toilet in his cell. *Pierron v. L.P.D.C.*, No. CV 16-01746, 2017 WL 4990551, at *3 (E.D. La. Feb. 9, 2017), report and recommendation adopted, No. CV 16-01746, 2017 WL 4919125 (E.D. La. Oct. 31, 2017).

The Supreme Court has spoken clearly that the Eighth Amendment concerns the deprivation of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The denial of medical care or other basic human needs is cruel and unusual because it can result in pain without purpose. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Humiliating punishments can be cruel and unusual. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). Yet restrictive or harsh conditions are not unconstitutional and are part of the penalty that criminal offenders pay for their offenses. *Rhodes*, 452 U.S. at 347. The Supreme Court has

acknowledged that the deprivation of bathroom breaks for a seven hour period create a situation of "particular discomfort and humiliation" that implicates the Eighth Amendment. *Hope*, 536 U.S. at 738. The Supreme Court also acknowledged the humiliation of not being able to change clothes after an inmate defecates on their person. *Id.* at 738 n8; *see also Caballero v. Lantz*, No. 3:05-CV-140CFD, 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008) (finding that an inmate being forced to defecate on himself may be sufficiently serious to support an Eighth Amendment violation).

As stated above, the test for deliberate indifference involves the objective test of cruel and unusual punishment just discussed as well as a two prong subjective test: 1) that the defendant was aware of facts from which the inference of an excessive risk of health or safety could be drawn; and 2) that the defendant actually drew the inference that such potential for harm existed. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Guzman alleges he was meeting with an attorney investigator regarding a charge of assaulting an officer. Dkt. No. 1. For this meeting he was placed in a cage with one place to sit down and just big enough to spread out a person's arms, Guzman alleges. Dkt. No. 12 at 3. Guzman alleges cage did not have running water or a toilet. *Id.* He alleges he was left in this room without a bathroom for 19 hours. *Id.* In that time, Guzman alleges he was forced to relieve himself on his person. *Id.*[1]

Defecation and urination are basic human needs. The deprivation of a place to defecate or urinate so that a person is forced to defecate or urinate on themselves amounts to a deprivation of a "minimal civilized measure of life's necessities." *See Wilson*, 501 U.S. at 298; *Hope*, 536 U.S. at 738. Denying a person a place to go to the bathroom for 19 hours, almost an entire day, is not just restrictive or harsh, it is the denial of a basic bodily function during a period when every person can be expected to need to relieve themselves. *See id.* Forcing someone to defecate or urinate on

---

[1] The Court passes no judgment on the merit of the facts only on what has been plausibly alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

themselves is extreme, it is unsanitary and humiliating and extends beyond the penological purposes of prison. *See id.* Moreover, this case is not analogous to prison condition cases which weigh whether a prisoner is exposed to already dirty facilities for long enough to constitute cruel and unusual punishment. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). This case concerns whether forcing a prisoner to relieve himself on himself and dirty his cell is cruel and unusual: it is a qualitatively different inquiry. *Hope*, 536 U.S. at 738. Accordingly, the Court finds that Guzman has stated the objective prong of a deliberate indifference claim.

Guzman alleges that the officers were aware of his extensive confinement in the tiny cage without bathroom facilities. Dkt. No. 12 at 4. He alleges that Sturgis returned to this cage several times every few hours and taunted Guzman and told him he was going to stay in the cage and Sturgis had him right where he wanted him. *Id.* Such conduct demonstrates 1) an awareness of the health risk posed to Guzman by having no place to relieve himself for 19 hours and 2) an actual inference drawn that such a potential for harm existed. *See Farmer*, 511 U.S. at 837. Guzman is not alleging negligence or gross negligence, rather he alleges deliberate actions and spoken words to show a knowing willingness that harm occur. *See id.* Accordingly, the Court finds that Guzman has stated the subjective prong for a deliberate indifference claim.

Given the presence of objective and subjective elements, the Court concludes Guzman has stated a claim for deliberate indifference and the Court **RETAINS** the claim.

### b. Retaliation

The M&R states the law around retaliation as:

> To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be

> enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred Id. In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.
>
> Plaintiff claims in his original complaint that Lt. Sturgis and Sgt. West retaliated against him by leaving in the shakedown cage for nineteen hours. While providing no specific facts at the Spears hearing, Plaintiff speculated that perhaps Lt. Sturgis and Sgt. West were trying to punish Plaintiff since Plaintiff had been charged with assaulting a TDCJ officer. Plaintiff's allegations of retaliation in this instance are purely conclusory. They merely reflect his personal belief he may have been the victim of retaliation by Lt.. [sic] Sturgis and Sgt. West. Plaintiff alleges no specific facts to indicate that, but for some retaliatory motive, the incident involving the shakedown cage would not have occurred. Accordingly, it is respectfully recommended that Plaintiff's retaliation claims against Lt. Sturgis and Sgt. West be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

Dkt. No. 12 at 14.

This section of the M&R partially states the degree of motivation needed to be alleged to state a claim of retaliation. It is not just direct evidence of motivation which is sufficient. "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

Here, Guzman has alleged a specific constitutional right, his Sixth Amendment right to counsel in federal prosecutions. Dkt. Nos. 1 at 3; 1-2 at 1. Guzman writes in his complaint several times about retaliation against incarcerated persons who exercise their right to an attorney after being charged with an offence against an officer: "I contend that they knew I was in there and this is a form of retaliation punishment, unsanctioned by policy, that is practiced by these two [officers] on a regular basis here at the McConnell Unit against inmates who seek recourse or assistance of any kind concerning defense of a criminal action involving a TDCJ officer and myself." Dkt. No. 1-2 at 1. Guzman also writes of

"…retaliation on inmates who exercise their right to legal counsel concerning criminal cases involving officers…" Dkt. No. 1 at 3. Guzman therefore alleges a specific constitutional right.

Guzman alleges his 19-hour confinement in a cage without a toilet occurred directly after meeting with his attorney's investigator regarding a charge of assaulting a TDCJ officer. Dkt. Nos. 1, 12 at 5. Guzman also alleges officers had knowledge of his confinement in the cage and an officer told him they intended to punish him this way. Dkt. No. 12 at 4. Therefore, Guzman alleges a chronology of events from which retaliation may plausibly be inferred. *Id.*; *see Jones*, 188 F.3d at 324. Finally, Guzman alleges a retaliatory adverse act, the confinement, and causation, that the confinement was caused by a retaliatory intent conveyed to him by the officer and inferred from the situation. *See id.*

The Court therefore finds Guzman has stated a claim for retaliation and the Court **RETAINS** Guzman's retaliation claim.

III. Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Memorandum and Recommendation, Dkt. No. 12.

After considering the objections, Dkt. No. 13, reviewing the record and the applicable law the Court hereby:

- **RETAINS** Plaintiff's deliberate indifference claim against Sturgis and West
- **RETAINS** Plaintiff's retaliation claim against Sturgis and West
- **DISMISSES** Plaintiff's claim for money damages against Defendants in their official capacities as barred by the Eleventh Amendment
- **DISMISSES** Plaintiffs claims against supervisory officials

SIGNED this 20th day of December, 2019.

_____
Hilda Tagle
Senior United States District Judge