# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UVALDO GUZMAN, | § | |
| TDCJ NO. 1423388, | § | |
| **Plaintiff,** | § | |
| | § | CIVIL ACTION NO. 2:18-CV-00432 |
| | § | |
| v. | § | |
| | § | |
| WARDEN FUENTEZ, ET AL. | § | |
| **Defendants.** | § | |

---

## DEFENDANTS STURGIS AND WEST'S MOTION FOR SUMMARY JUDGMENT

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General For
Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

**JASON T. BRAMOW\***
Assistant Attorney General
Texas State Bar No. 24101545
Southern District I.D. No. 3134903
*Jason.Bramow@oag.texas.gov*

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

## *ATTORNEY OF RECORD – COUNSEL FOR DEFENDANTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................ iii

SUMMARY OF THE ARGUMENT ............................................................................. 2

MOTION FOR SUMMARY JUDGMENT .................................................................. 3

A.   STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................... 3

   B.   ISSUES PRESENTED ...........................................................................................5

   i.   Whether Guzman's claims of stress and anxiety amount to a physical injury under the PLRA. ...........................................................................................................................5

   ii.   Whether Sturgis and West are entitled to qualified immunity. ..................................5

   iii.   Whether Guzman's exercise of a constitutional right caused Sturgis and West to intend to retaliate against Guzman. .........................................................................................5

   iv.   Whether Sturgis and West acted with deliberate indifference when they ordered officers under their command to remove Guzman from the holding cell and reasonably believed he had been moved before the end of their shift. ..................................................................5

   C.   SUMMARY JUDGMENT STANDARD ................................................................5

   D.   ARGUMENTS AND AUTHORITIES ...................................................................7

     i.   Guzman's claims for compensatory damages must be dismissed. .............................7

     ii.   Defendants are entitled to qualified immunity against Guzman's claims of deliberate indifference and retaliation. ..............................................................................................9

       a.   Guzman's claims do not amount to retaliation. .................................................. 11

         1.   Guzman does not have a constitutional right to assault prison staff. .................... 12

         2.   Defendants did not have any intent to retaliate against Guzman. .......................... 12

         3.   Guzman's attorney visit was not the cause of Guzman being left in the holding cell. ............................................................................................................................ 13

       b.   Guzman's claims do not amount to deliberate indifference ............................... 14

       c.   It was not clearly established that Defendants' actions violated Guzman's constitutional rights ............................................................................................ 17

       d.   Defendants' actions were objectively reasonable. .............................................. 19

CONCLUSION ............................................................................................................ 21

NOTICE OF ELECTRONIC FILING ......................................................................... 23

CERTIFICATE OF SERVICE .................................................................................... 23

# TABLE OF AUTHORITIES

Cases

Alexander v. Tippah County, Mississippi,
   351 F.3d 626 (5th Cir. 2003) (per curiam ................................................................ 13

*Anderson v. Creighton,*
   483 U.S. 635 (1987) ............................................................................... 18, 19, 37

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ........................................................................................ 9

*Babb v. Dorman,*
   33 F.3d 472 (5th Cir.1994) ............................................................................... 15

*Batyukova v. Doege,*
   994 F.3d 717 (5th Cir. 2021) ........................................................................ 34, 35

*Bd. of Comm'rs of Bryan Cty. v. Brown,*
   520 U.S. 397 (1997) ...................................................................................... 30

*Bibbs v. Early,*
   541 F.3d 267 (5th Cir. 2008) ............................................................................ 22

*Brown v. Callahan,*
   623 F.3d 249 (5th Cir. 2010) ............................................................................. 8

*Buchanan v. Harris,*
   No. CV H-19-4571, 2020 WL 3577157 (S.D. Tex. July 1, 2020) ...................................... 12

*Cadena v. El Paso Cty.,*
   946 F.3d 717 (5th Cir. 2020) ............................................................................ 28

*Carroll v. Ellington,*
   800 F.3d 154 (5th Cir. 2015) ............................................................................ 28

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ....................................................................................... 3

*Cleveland v. Bell,*
   938 F.3d 672 (5th Cir. 2019) ............................................................................ 29

*Coleman v. Harris,*
   296 F.App'x 428 (5th Cir. 2008) ........................................................................ 20

*Collier v. Montgomery,*
   569 F.3d 214 (5th Cir. 2009) ............................................................................. 8

*Connick v. Thompson,*
   563 U.S. 51 (2011) ........................................................................................ 30

*Crawford–El v. Britton,*
   523 U.S. 574 (1998) ...................................................................................... 21

*District of Columbia v. Wesby,*
   138 S. Ct. 577 (2018) ................................................................................ 35, 36

*Dudley v. Angel,*
   209 F.3d 460 (5th Cir. 2000) ............................................................................ 16

*Estelle v. Gamble,*
   429 U.S. 97 (1976) .................................................................................... 26, 29

*Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union,*
   77 F.3d 850 (5th Cir. 1996) .............................................................................. 8

iii

*Farmer v. Brennan,*
   511 U.S. 825 (1994) ..................................................................27, 29, 30, 31

*Gaines v. Davis,*
   928 F.2d 705 (5th Cir. 1991) ...................................................................... 14

*Garcia v. Currie,*
   674 Fed. App'x 432 (5th Cir. 2017) ........................................................... 26

*Geiger v. Jowers,*
   404 F.3d 371 (5th Cir. 2005) ...................................................................... 10

*Gobert v. Leonard,*
   No. G-06-295, 2006 WL 2062131 (S.D. Tex. July 21, 2006) .................... 13

*Hamilton v. Segue Software, Inc.,*
   232 F.3d 473 (5th Cir. 2000) ........................................................................ 6

*Hare v. City of Corinth,*
   74 F.3d 633 (5th Cir. 1996) ........................................................................ 30

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ...................................................................14, 15, 16, 37

*Hope v. Pelzer,*
   536 U.S. 730 (2002) .................................................................................... 34

*Hunter v. Bryant,*
   502 U.S. 224 (1991) .................................................................................... 15

*Huss v. Gayden,*
   571 F.3d 442 (5th Cir. 2009) ...................................................................... 24

Hutchins v. McDaniels,
   612 F.3d 193 (5th Cir. 2007) (per curiam ................................................. 11

*Jacquez v. Procunier,*
   801 F.2d 789 (5th Cir.1986) ....................................................................... 15

*James v. Sadler,*
   909 F.2d 834 (5th Cir.1990) ....................................................................... 15

*Jefferson v. Endsley,*
   No. 5:13-CV-18, 2015 WL 5635274 (E.D.Tex., September 24, 2015) ....... 25

*Johnson v. Johnson,*
   385 F.3d 503 (5th Cir.2004) ....................................................................... 36

*Johnson v. Rodriguez,*
   110 F.3d 299 (5th Cir. 1997) ................................................................20, 24

*Little v. Liquid Air Corp.,*
   37 F.3d 1069 (5th Cir. 1994) ........................................................................ 7

*Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ...................................................................................... 9

*Mayfield v. Texas Dept. of Criminal Justice,*
   529 F.3d 599 (5th Cir. 2008) ................................................................10, 11

*McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,*
   66 F.3d 89 (5th Cir. 1995) ............................................................................ 7

*McClendon v. City of Columbia,*
   305 F.3d 314 (5th Cir. 2002) ................................................................16, 32

*McCoy v. Alamu,*
   950 F.3d 226 (5th Cir. 2020) ...................................................................... 34

*McDonald v. Steward,*
   132 F.3d 225 (5th Cir. 1998) ................................................................19, 23

iv

*McGowan v. Epps,*
    No. 4:16-CV-242-DMB-DAS, 2018 WL 4521028 ........................................... 22

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ........................................................................................... 14

*Morris v. Powell,*
    449 F.3d 682 (5th Cir. 2006) ............................................................................. 21

*Mouille v. City of Live Oak,*
    977 F.2d 924 (5th Cir. 1992) ............................................................................. 18

*Mullenix v. Luna,*
    577 U.S. 7 (2015) ........................................................................................... 34, 35

*Rankin v. Klevenhagen,*
    5 F.3d 103 (5th Cir. 1993) ................................................................................. 17

*Rhodes v. Chapman,*
    452 U.S. 337 (1981) ...................................................................................... 27, 28

*Roe v. Tex. Dep't of Protective & Regulatory Servs.,*
    299 F.3d 395 (5th Cir. 2002) .......................................................................... 32, 33

*Rombach v. Culpepper,*
    No. 2020-30554, 2021 WL 2944809 (5th Cir. July 13, 2021) ....................... 34, 36

*Salas v. Carpenter,*
    980 F.2d 299 (5th Cir. 1992) ............................................................................. 16

*Samaad v. City of Dallas,*
    940 F.2d 925 (5th Cir. 1991) ............................................................................. 17

*Saucier v. Katz,*
    533 U.S. 194 (2001) ........................................................................................... 33

*Siegert v. Gilley,*
    500 U.S. 226 (1991) ...................................................................................... 17, 18

*Soliz v. Sanchez,*
    No. 3:18-CV-181, 2019 WL 1879471 (S.D. Tex. Apr. 26, 2019) ..................... 13

*Sorenson v. Ferrie,*
    134 F.3d 325 (5th Cir. 1998) ............................................................................. 33

*Southard v. Tex. Bd. of Criminal Justice,*
    114 F.3d 539  (5th Cir. 1997) ............................................................................ 38

*Spann v. Rainey,*
    987 F.2d 1110 .................................................................................................... 18

*Stewart v. Murphy,*
    174 F.3d 530 (5th Cir. 1999) ............................................................................. 29

*Streetman v. Jordan,*
    918 F.2d 555 (5th Cir. 1990) ............................................................................. 19

*Strong v. University HealthCare Systems, LLC.,*
    482 F.3d 802 (5th Cir. 2007) ............................................................................. 24

*Sublet v. Million,*
    451 Fed. Appx. 458 (5th Cir. 2011) .................................................................. 11

*Talib v. Gilley,*
    138 F.3d 211 (5th Cir. 1998) ............................................................................. 26

*Tampa Times Co. v. National Labor Relations Board,*
    193 F.2d 582 (5th Cir. 1952) ............................................................................. 24

*Thompson v. Upshur County, TX,*
    245 F.3d 447 (5th Cir. 2001) .......................................................................... 28, 37

*Valencia v. Wiggins,*
  981 F.2d 1440 (5th Cir.) ................................................................. 18, 37
*Wallace v. Texas Tech Univ.,*
  80 F.3d 1042 (5th Cir. 1996) .................................................................. 7
*White v. Pauly,*
  137 S. Ct. 548 (2017) ........................................................................... 35
*Whittington v. Lynaugh,*
  842 F.2d 818 (5th Cir. 1988) ................................................................ 20
*Williams v. De-Valdenebro,*
  No. 4:13-CV-960, 2014 WL 4640745 (S.D. Tex. Sept. 10, 2014) ......... 12
*Wilson v. Lynaugh,*
  878 F.2d 846 (5th Cir. 1989) ................................................................ 26
*Woods v. Edwards,*
  51 F.3d 577 (5th Cir. 1995) .................................................................. 20
*Woods v. Smith,*
  60 F.3d 1161 (5th Cir. 1995) ........................................................... 20, 21

Statutes

28 U.S.C. § 1915(e)(2)(B) ....................................................................... 8
28 U.S.C. § 1915A(b) ............................................................................. 8
42 U.S.C. § 1983 ......................................................................... 1, 7, 12
42 U.S.C. § 1997e(e) .................................................................. 2, 7, 8, 9
U.S. Const. amend. VI .......................................................................... 12

Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................... 8
Fed. R. Civ. P. 56(c) ............................................................................... 6

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UVALDO GUZMAN, | § | |
| TDCJ NO. 1423388, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:18-CV-00432 |
| | § | |
| v. | § | |
| | § | |
| WARDEN FUENTEZ, ET AL. | § | |
| Defendants. | § | |

---

### DEFENDANTS STURGIS AND WEST'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendants Skinner Sturgis ("Sturgis") and Tommy West ("West"), together ("Defendants"), through the Office of the Attorney General for the State of Texas, who file this motion for summary judgment. In support thereof, Defendants respectfully offer the following:

### I.
### STATEMENT OF THE CASE

Plaintiff Uvaldo Guzman is an inmate confined by the Texas Department of Criminal Justice ("TDCJ") at the McConnell Unit in Beeville, Texas. On November 29, 2018, proceeding pro se and in forma pauperis, Guzman filed suit pursuant to 42 U.S.C. § 1983 alleging that Defendants acted with deliberate indifference when they subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, in retaliation for the exercise of his Sixth Amendment right to counsel. ECF No. 1. Guzman specifically alleged that he was forced to remain in a shakedown cage for nineteen (19) hours following a meeting with an investigator for Guzman's attorney in a criminal proceeding. Following a *Spears* hearing on February 28, 2019, Magistrate Judge B. Janice Ellington recommended that Guzman claims against West, Sturgis, Fuentez, and Fernandez in their official capacities be dismissed as barred by the Eleventh Amendment. ECF No. 12. Magistrate Judge Ellington further recommended that Guzman's claims against West and Sturgis for deliberate

indifference and retaliation, as well as Guzman's claims against Fuentez and Fernandez based on supervisory liability, be dismissed for failure to state a claim. *Id.*

On March 2, 2020, the Court adopted in part, as to Guzman's claims against West, Sturgis, Fuentez, and Fernandez in their official capacities, as well as Plaintiff's claims against Fuentez and Fernandez based on supervisory liability, and denied in part, as to Guzman's claims against West and Sturgis for deliberate indifference and retaliation, Magistrate Judge Ellington's Memorandum and Recommendation. ECF No. 15. Guzman was subsequently appointed counsel on December 21, 2020. ECF No. 31. On March 23, 2021, Guzman filed his second amended complaint, again alleging that West and Sturgis acted with deliberate indifference when they forced Plaintiff to remain in a shakedown cage for nineteen (19) hours, following a meeting with an investigator for Guzman's attorney in a criminal proceeding, in retaliation for the exercise of his Sixth Amendment right to counsel. ECF No. 38. Guzman seeks compensatory and punitive damages, as well as costs of suit and attorney's fees. *Id.*

## II.
## SUMMARY OF THE ARGUMENT

There is no issue of material fact as to whether Plaintiff Guzman suffered a physical injury sufficient to satisfy the requirements of Section 1997e(e) of the PLRA. Additionally, the competent summary judgment evidence demonstrates that Defendants Sturgis and West did not retaliate against Guzman or act with deliberate indifference in violation of Guzman's Eighth Amendment rights. Further, it was not clearly established that Defendants' actions amounted to a violation of Guzman's constitutional rights. Finally, Guzman failed to demonstrate that Defendants' actions were unreasonable in light of the circumstances that existed at the time; namely that the Defendants were the supervisors required to respond to numerous incidents occurring in their building, that Defendants delegated the task to other officers who also became busy responding to incidents, that Defendants reasonably believed Guzman had been removed from the holding cell and taken back

2

to his housing area because the light was off in the room where Guzman was, and the door was closed. Therefore, because Guzman has failed to demonstrate a genuine issue of material fact regarding Defendants' entitlement to qualified immunity, Defendants request that judgment be granted in their favor and all claims brought against them be dismissed with prejudice

### III.
### MOTION FOR SUMMARY JUDGMENT

Defendants assert that there are no genuine issues of material fact for trial and requests that the Court grant summary judgment in their favor pursuant to *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). In support of their Motion for Summary Judgment, Defendants respectfully submit the following:

**Defendants' Exhibit A:**          **Deposition Transcript of Uvaldo Guzman;**

**Defendants' Exhibit B:**          **Spears Hearing Transcript from February 28, 2019;**

**Defendants' Exhibit C:**          **Deposition Transcript of Skinner Sturgis;**

**Defendants' Exhibit D:**          **Deposition Transcript of Tommy West.**

### A.  STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

At all times relevant to this suit, Guzman was an inmate confined by TDCJ at the William G. McConnell Unit in Beeville, Texas.

At all times relevant to this suit, Sturgis was employed as a Lieutenant by TDCJ, an agency of the state of Texas, working at the at the William G. McConnell Unit, and acting within his scope of employment.

At all times relevant to this suit, West was employed as a Sergeant by TDCJ, an agency of the state of Texas, working at the William G. McConnell Unit, and West was acting within his scope of employment.

---

[1] These facts are either drawn from Guzman's deposition testimony, and taken as true, or are undisputed testimony from Defendants Sturgis and West.

On May 23, 2018, Guzman was a level 1 offender assigned to 12 building, also known as "administrative segregation." Exhibit A at 11:14–12:23. Guzman was removed from his cell sometime between 7:30 and 8:00 am to attend a meeting with an investigator for his criminal attorney. Exhibit A at 22:6–22:17. During the meeting, Guzman and the investigator were having difficulty hearing each other. Exhibit A at 23:13–23:16. The investigator then asked for Guzman to be moved into a different area so that they could better communicate. Exhibit A at 23:17–23:23. Guzman was then moved into a bigger room containing secure holding cells. Exhibit A at 24:6–24:10. At around 8:30 am, Sturgis placed Guzman inside of a holding cell in the corner of the room which could not be seen from the door. Exhibit A at 23:24–25:19. The holding cells are approximately three feet wide, two feet long, and seven feet tall. Exhibit A at 26:11–26:19.

After meeting with the investigator for 45 minutes, the investigator exited the room. Exhibit A at 28:21–29:8. After two hours had passed, Sturgis entered the room, where he expressed to Guzman his surprise to find him finished with his meeting and told Guzman that he would "be right back." Exhibit A at 30:4–30:23. After another hour passed, Sturgis and West both entered the room, where Guzman was asked "You still here?" and was told that the two would be right back to get Guzman out of the holding cell. Exhibit A at 30:24–31:7. After another hour or two, West entered the room, where he asked Guzman "you still in here?" and told Guzman "I'll be right back and I'll get you out of here." Exhibit A at 31:20–32:5. At some point, Sturgis entered the room with another officer, and told Guzman that he would come back to get him out of the holding cell. Exhibit A at 35:6–36:4.

Over the course of the day, Sturgis ordered other staff members to have Guzman removed from the holding cell, but staff, including Sturgis and West, constantly became busy attending to other matters and incidents occurring on 12 building requiring the presence of additional staff members. Exhibit C at 74:25–76:21. Because Defendants were the shift supervisors, every call for

4

additional staff required Defendants to respond with their personal presence. Exhibit C at 120:13–121:6. Because of Guzman's custody level, at least two members of security staff were required to move Guzman from the holding cell to his housing area. Exhibit C at 119:4–120:6. At no point did Sturgis or West ever threaten Guzman or call Guzman any names. Exhibit A at 36:5–36:9.

Before shift change at 6:00 pm, an inmate janitor closed the door to the room Guzman was in. Exhibit A at 37:14–38:9. Before leaving for the day, Sturgis walked past the door and saw that the lights were off, leading Sturgis to the assumption that Guzman "had been removed from that holding area and taken back to his assigned cell." Exhibit C at 90:4–90:15. It is not common for doors to rooms not being used to be left open, and when a room is not being used, the door to it should be secured. Exhibit A at 50:25–51:2; Exhibit C at 90:6–90:12; Exhibit D at 36:18–38:2. Defendants Sturgis and West then went home, both believing that Guzman had been removed from the holding cell and returned to his cell on E-wing. Exhibit C at 90:4–90:15. Guzman was subsequently discovered in the holding cell by second shift officers after midnight. Exhibit A at 43:11–44:12.

## B.  ISSUES PRESENTED

   i.  **Whether Guzman's claims of stress and anxiety amount to a physical injury under the PLRA.**

   ii.  **Whether Sturgis and West are entitled to qualified immunity.**

   iii.  **Whether Guzman's exercise of a constitutional right caused Sturgis and West to intend to retaliate against Guzman.**

   iv.  **Whether Sturgis and West acted with deliberate indifference when they ordered officers under their command to remove Guzman from the holding cell and reasonably believed he had been moved before the end of their shift.**

## C.  SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

The nonmoving party must go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace,* 80 F.3d at 1048 (quoting *Little,* 37 F.3d at 1075). A court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir. 1995), *opinion corrected on denial of reconsideration,* 70 F.3d 26 (5th Cir. 1995).

"A qualified immunity defense to § 1983 liability alters the usual summary judgment burden of proof; once an official pleads the defense of qualified immunity in a § 1983 action, the burden shifts to the plaintiff." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010); *see also Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir. 2009) ("Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised").

Once the moving party has carried its burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union,* 77 F.3d 850, 853 (5th Cir. 1996). The nonmoving party cannot discharge its burden by alleging mere legal conclusions or unsubstantiated assertions; instead, it must present affirmative evidence

6

in order to demonstrate the existence of a genuine issue of material fact and defeat a motion for summary judgment supported by competent evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### D.  ARGUMENTS AND AUTHORITIES

#### i.  Guzman's claims for compensatory damages must be dismissed.

An inmate's suit under 42 U.S.C. § 1983 must comply with the physical injury requirements of PLRA. *See* 42 U.S.C. § 1997e(e). The PLRA provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Section 1997e(e) prohibits inmates from seeking compensatory damages "for violations of federal law where no physical injury is alleged." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008).

It is the nature of the relief sought, and not the underlying substantive violation, that controls the application of the physical injury requirement contained in Section 1997e(e). *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Id.* While the physical injury requirement does not preclude claims for nominal or punitive damages, when there is no physical injury and only compensatory damages are sought, the claim for damages should be dismissed. *See Mayfield*, 529 F.3d at 605–06; *Hutchins v. McDaniels*, 612 F.3d 193, 197–98 (5th Cir. 2007) (per curiam).

In his second amended complaint, Guzman alleges that he was "objectively exposed to a substantial risk of serious harm." However, Guzman fails to allege that he actually suffered any harm other than that he "began to feel sick and felt his heart pounding" as a result of Defendants' alleged actions. ECF No. 38 at ¶ 4.21. These injuries, while possibly causing discomfort to Plaintiff, do not

7

amount to a physical injury sufficient to satisfy the requirements of Section 1997e(e). *See Sublet v. Million*, 451 Fed. Appx. 458, 459 (5th Cir. 2011) (affirming dismissal on Rule 12 motion where Plaintiff's injury was *de minimus*, as it consisted of only temporary pain stemming from numbness and tenderness in his left hand and arm); *see also Buchanan v. Harris*, No. CV H-19-4571, 2020 WL 3577157, at *4 (S.D. Tex. July 1, 2020) (dismissing case pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B) where Plaintiff alleged that he experienced "discomfort" and developed sores on his residual limb because he was unable to shower or clean the liner on his prosthesis for a period of five days); *Williams v. De-Valdenebro*, No. 4:13-CV-960, 2014 WL 4640745, at *4 (S.D. Tex. Sept. 10, 2014) (dismissing case pursuant to FED. R. CIV. P. 12(b)(6) where "the only actual harm allegedly suffered by Plaintiff during this time was a general feeling of 'illness' and 'not feeling well.'"); *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 631 (5th Cir. 2003) (per curiam) (holding that nausea and vomiting that was not severe enough to require medical treatment was insufficient to qualify as a physical injury).

Additionally, Guzman's claims that he may have suffered a stress or anxiety reaction are nothing more than speculation and do not amount to a physical injury sufficient to satisfy the requirements of Section 1997e(e). *See Soliz v. Sanchez*, No. 3:18-CV-181, 2019 WL 1879471, at *4 (S.D. Tex. Apr. 26, 2019) (claims for damages for stress, anxiety, rapid heartbeat, and other symptoms treated by psychiatric counseling beginning 18 months after the incident do not survive the PLRA's physical injury requirement); *Gobert v. Leonard*, No. G-06-295, 2006 WL 2062131, at *2 (S.D. Tex. July 21, 2006) (claims for damages for anxiety, stress, and headaches do not survive the PLRA's physical injury requirement).

Further, Guzman's own testimony during the *Spears* Hearing conducted in this case by the Court on February 28, 2019, emphasizes the fact that he suffered no physical injury. *See* Exhibit B at 24:10-21 ("I was okay as far as physical . . . . There wasn't nothing [sic] wrong with me."). During

8

his deposition, Guzman continued to emphasize that he suffered no physical injury. *See* Exhibit A at 60:21–60:24. Therefore, because Guzman did not suffer a physical injury and does not satisfy the requirements of Section 1997(e)(e), his claims for compensatory damages must be dismissed.

### ii.  Defendants are entitled to qualified immunity against Guzman's claims of deliberate indifference and retaliation.

Qualified immunity is immunity from suit and not just a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, qualified immunity shields a defendant from the costs of trial and the burdens of broad-reaching discovery. *Gaines v. Davis*, 928 F.2d 705, 706 (5th Cir. 1991), *reh'g denied*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The United States Supreme Court has repeatedly stressed that qualified immunity must be decided at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This Court has long held that qualified immunity is to be resolved on the face of the pleadings and with limited resort to pre-trial discovery. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994) (citing *James v. Sadler*, 909 F.2d 834, 838 (5th Cir.1990)). In fact, district courts have an obligation to carefully scrutinize a plaintiff's claims before subjecting public officials to broad-reaching discovery. *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986). This rule is designed to protect public officials from the burdens and costs of litigation and to prevent disruption of government responsibilities. *Harlow*, 457 U.S. at 817.

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818.  The Fifth Circuit has emphasized the extent of this shield, finding that a government official is entitled to qualified immunity unless all reasonable officials would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).

Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("When a Defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense."). In determining whether the plaintiff has successfully overcome the qualified immunity defense, the court engages in a two-step inquiry. First, the court must consider "whether the plaintiff asserted a violation of a constitutional right at all—prior to addressing the potentially unnecessary question of whether plaintiff asserted a violation of a clearly established right." *Siegert v. Gilley*, 500 U.S. 226, 230 (1991) (internal quotation marks omitted); *Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir. 1991) (holding that *Siegert* requires a plaintiff first to allege a constitutional violation before a court will decide whether the right is "clearly established"). In making this assessment, the court uses "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

If a plaintiff has not cleared this first hurdle, the court need not further address the question of qualified immunity. However, if the court finds that the plaintiff has alleged the violation of a constitutional right—a clearly established constitutional right—the court must go on to determine if the defendant official's actions could reasonably have been thought consistent with that right. *Siegert*, 500 U.S. at 230.

In making this second determination, the court looks to whether the defendant's actions were objectively reasonable as measured by reference to the law as it existed at the time the conduct occurred and in light of the information that the defendant possessed. *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1992) (citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. (1993)); *Valencia v. Wiggins*, 981 F.2d 1440, 1448 (5th Cir.) *cert. denied*, 113 S.Ct. 2998 (1993); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir. 1990). Regardless of a defendant

10

official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he is entitled to qualified immunity.  Thus, officials are immune if their "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638.

As discussed below, Guzman's allegations fail to even reach the second step of the qualified immunity analysis because he has failed to demonstrate how Defendants violated a clearly established Constitutional right after Sturgis and West made attempts to have Guzman removed from the holding cell and believed he had been removed before heading off shift for the day. Therefore, Defendants are entitled to qualified immunity and Guzman's claims should be dismissed.

a. **Guzman's claims do not amount to retaliation.**

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997) (*citing Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)). Specific facts must be alleged in order to sustain a retaliation claim; conclusory allegations are not sufficient. *Coleman v. Harris*, 296 F.App'x 428, 429 (5th Cir. 2008); *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988). The Fifth Circuit has repeatedly emphasized that because "the prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties[,] [c]laims of retaliation . . . must be regarded with skepticism." *Woods*, 60 F.3d at 1166.

11

Further, some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford–El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id.* Retaliation against a prisoner is actionable only if it is "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted).

### 1.  Guzman does not have a constitutional right to assault prison staff.

The Sixth Amendment to the United States Constitution provides persons accused of a criminal offense with the right to assistance of counsel in their defense. U.S. Const. amend. VI. It is uncontested that to the extent Guzman's claims rely on his exercise of his Sixth Amendment right, such conduct presents a protected constitutional right. However, to the extent that Guzman claims that Defendants Sturgis and West retaliated against him because he assaulted a correctional officer at another facility, he fails to establish the exercise of a constitutional right. *See McGowan v. Epps*, No. 4:16-CV-242-DMB-DAS, 2018 WL 4521028, at *3 n. 3 (N.D. Miss. Sept. 21, 2018) ("To the extent McGowan argues his transfer was in retaliation for assaulting MDOC staff . . . such conduct does not qualify as a protected activity.").

### 2.  Defendants did not have any intent to retaliate against Guzman.

It is uncontroverted that Defendants Sturgis and West did not have any meaningful interactions with Guzman prior to the date of this incident. Exhibit A at 48:24–49:24. Additionally, neither Sturgis nor West were aware of why Guzman was assigned to administrative segregation. Exhibit C at 118:10–118:14; Exhibit D at 71:24–72:1. Nor was West aware of why Guzman was moved to the McConnell Unit. Exhibit D at 72:12–72:14. Guzman testified that he "can't say the reason why they [left him in a holding cell]," beyond anything more than a guess, but the meeting

with his investigator "brought about the opportunity for them to do it." Exhibit B at 74:20–74:24; 98:18–98:3.

However, Defendants never intended for Guzman to remain in the holding cell as long as he did. Sturgis "wanted [Guzman] placed back into his cell where he belonged." Exhibit C at 123:1–123:8. To accomplish that goal, Defendants delegated the task of removing Guzman to other officers because they were required to attend to other issues that were occurring in 12 building. Exhibit C at 74:25–76:21; 120:13–121:6. In fact, by the end of their shift, Defendants believed that Guzman had been removed from his cell and taken back to his housing area because the light was off in the room where Guzman was, and the door was closed. Exhibit C at 90:4–90:15. Thus, the competent summary judgment evidence establishes that Defendants did not intend to retaliate against Guzman and his claims should be dismissed with prejudice.

### 3. Guzman's attorney visit was not the cause of Guzman being left in the holding cell.

To prove causation plaintiff must show that "but for the retaliatory motive, the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (citing *Rodriguez*, 110 F.3d at 310). Plaintiff relies on his personal belief and the temporal proximity between his meeting with his investigator and his subsequently being left in a holding cell to attempt to show the requisite "but for" causation. Guzman testified that he "can't say the reason why they [left him in a holding cell]," beyond anything more than a guess, but the meeting with his investigator "brought about the opportunity for them to do it." Exhibit B at 74:20–74:24; 98:18–98:3. However, in *Strong*, the Fifth Circuit held that temporal proximity is insufficient to prove "but for" causation. *Strong v. University HealthCare Systems, LLC.*, 482 F.3d 802, 808 (5th Cir. 2007). The mere fact that one incident precedes another is not proof of a causal connection because this is the logical fallacy of post hoc, ergo propter hoc (after this, therefore because of this). *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (noting "the post hoc ergo propter hoc fallacy assumes causality from temporal sequence" which is

13

a "false inference"); *see also Tampa Times Co. v. National Labor Relations Board*, 193 F.2d 582, 583 (5th Cir. 1952) (post hoc ergo propter hoc is not sound logic); *Jefferson v. Endsley*, No. 5:13-CV-18, 2015 WL 5635274, at *2 (E.D.Tex., September 24, 2015), *aff'd sub nom. Jefferson v. Smith*, 714 Fed. Appx. 450 (5th Cir. 2018) (temporal proximity between the prison officials' learning of Jefferson's grievances and the receipt of disciplinary action almost a week later did not show the disciplinary action was retaliatory).

The competent summary judgment evidence, however, establishes that Guzman remaining in the cage throughout Defendants' shift and into the next day was not a result of Sturgis or West intending to retaliate against Guzman for his meeting with an investigator. Rather, this unfortunate circumstance resulted because Defendants Sturgis and West were busy attending to issues that occurred on 12 building that required their presence. Exhibit C at 74:25–76:21; 120:13–121:6. As Defendants were attending to those other issues, they would delegate the task to officers under their command because they were "just trying to find the abled body or certain people available to do the escort and get it done." Exhibit C at 95:10–95:15. Due to the number of issues that occurred that day, the escort never occurred. Towards the end of their shift, Defendant Sturgis saw that the light was off in the room where Guzman was and the door was closed, leading to his belief that Guzman had been removed from the holding cell and taken back to his housing area. Exhibit C at 90:4–90:15. Thus, the competent summary judgment evidence establishes that Guzman's meeting with his attorney's investigatory was not the cause of his being left in the holding cell and his retaliation claims should be dismissed with prejudice.

### b.  Guzman's claims do not amount to deliberate indifference.

Claims concerning the conditions of confinement arise out of the Eighth Amendment's prohibition of cruel and unusual punishment. "[P]unishment rises to the level of cruel and unusual only if it involves an 'unnecessary and wanton infliction of pain.'" *Talib v. Gilley*, 138 F.3d 211, 213–

14

14 (5th Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he Eighth Amendment protects prisoners from conditions of confinement that constitute threats to their health or safety, but not against those that cause mere discomfort or inconvenience." *Garcia v. Currie*, 674 Fed. App'x 432, 433 (5th Cir. 2017) (citing *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989)). Prison conditions may be "restrictive and even harsh" without violating the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution "'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825 (1994) (quoting *Rhodes*, 452 U.S. at 349). Specifically, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ." *Id.* (internal quotation marks omitted).

To demonstrate a violation of the Eighth Amendment where conditions of confinement are concerned, a prisoner must demonstrate that his confinement resulted in a deprivation that was "objectively, sufficiently serious," such that it resulted in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347). In addition, the prisoner must also show that each named prison official acted with deliberate indifference to that risk. *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015) ("[W]e examine each individual's entitlement to qualified immunity separately . . . ." (internal quotation marks and citation omitted)). "Deliberate indifference is an extremely high standard to meet." *Cadena v. El Paso Cty.*, 946 F.3d 717, 728 (5th Cir. 2020). It cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of serious harm. *See Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). Nor do actions that are merely inept or ineffective amount to deliberate indifference. *Id.* Rather, to establish deliberate indifference, a plaintiff must show that that the defendant (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the

inference that the risk existed; and (3) disregarded the risk. *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and citations omitted).

In other words, for a prison official to be held liable for deliberate indifference, the official must "*know of* and *disregard* an excessive risk to inmate health and safety." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (quoting *Estelle*, 429 U.S. at 102-03) (emphasis added). "[D]eliberate indifference 'is a stringent standard of fault, requiring proof that a [defendant] disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id.* Thus, as it is used in the Eighth Amendment context, deliberate indifference comprehends more than mere negligence but less than purposeful or knowing infliction of harm; it requires a showing of "subjective recklessness" as used in criminal law. *Farmer*, 511 U.S. at 839–40; *Hare v. City of Corinth*, 74 F.3d 633, 647–48 (5th Cir. 1996).

Here, it is uncontested that the facts, as alleged by Guzman and taken as true by for purposes of this motion, objectively establish that Guzman being left in the holding cell amount to conditions resulted in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. However, the competent summary judgement evidence establishes that neither Sturgis nor West were aware of facts giving rise to a substantial risk of serious harm, actually drew such an inference, or disregarded that risk.

Both Sturgis and West testified that they did not have a concern that an offender being left in a holding cell would become injured. Exhibit C at 123:3-123:10; Exhibit D at 72:22–73:1. However, checking on Guzman "was a constant ongoing thing." Exhibit C at 94:17–94:18. Each time Defendants would pass by the room, they checked on him to make sure he was okay. Exhibit C at 78:11–78:16. Every time Defendants Sturgis and West entered the room, they were surprised

16

to find Guzman still in the holding cell and indicated to Guzman their intent to have him removed. Exhibit A at 30:4–30:23; 30:24–31:7; 31:20–32:5; 35:6–36:4. Additionally, throughout their shift, Sturgis ordered other staff members to have Guzman removed from the holding cell; but on that day, security staff, including Sturgis and West, were constantly busy attending to matters occurring on 12 building requiring the presence of additional staff members. Exhibit C at 74:25–76:21. Because Defendants were the shift supervisors, every call for additional staff required Defendants to respond with their personal presence. Exhibit C at 120:13–121:6. As Defendants were responding to those other matters, they would delegate the task to officers under their command because they were "just trying to find the abled body or certain people available to do the escort and get it done." Exhibit C at 95:10–95:15.

Towards the end of their shift, Defendant Sturgis saw that the light was off in the room where Guzman was and the door was closed, leading to their belief that Guzman had been removed from the holding cell and taken back to his housing area. Exhibit C at 90:4–90:15. It was reasonable for Defendants to hold this belief because it is not common for doors to rooms not being used to be left open, and when a room is not being used, the door to it should be secured. Exhibit A at 50:25–51:2; Exhibit C at 90:6–90:12; Exhibit D at 36:18–38:2. Thus, when Sturgis and West concluded their shift, they were no longer aware of Guzman being in the holding cell. The competent summary judgment evidence establishes that, at most, Defendants' actions amount to mere negligence but fails to rise to the level of deliberate indifference. Therefore, Guzman's claims of deliberate indifference against Defendants Sturgis and West should be dismissed with prejudice.

c.   **It was not clearly established that Defendants' actions violated Guzman's constitutional rights.**

Even assuming *arguendo*, however, that the Court finds a violation of Plaintiff's constitutional rights, this is not enough to overcome Defendants' qualified immunity. The Court must then

proceed to the next step of the analysis, which is to determine whether Defendants' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002); *see also McClendon*, 305 F.3d at 323 (ruling that "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established") (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In order for the law to be classified as "clearly established," the case law must draw a bright line: "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what Defendant is doing violates federal law in the circumstances." *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998). The primary question at this point in the inquiry, therefore, is "whether the state of the law at the time of the state action gave [Defendant] fair warning that his alleged treatment of the [Plaintiff] was unconstitutional." *Roe*, 299 F.3d at 409 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). "The dispositive question is whether the violative nature of *particular* conduct is clearly established. [That] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *McCoy v. Alamu*, 950 F.3d 226, 232 (5th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

There are two ways a plaintiff may show that an alleged right is clearly established. *Rombach v. Culpepper*, No. 2020-30554, 2021 WL 2944809, at *6 (5th Cir. July 13, 2021). First, "the plaintiff may identify a case or body of relevant case law in which an officer acting under similar circumstances was held to have violated the Constitution." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (cleaned up). While there is no requirement that a case be "directly on point for a right to be clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix*, 577 U.S. at 13). To settle

this debate, one can only look to Supreme Court jurisprudence. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018) ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity.").

Alternatively, the plaintiff may demonstrate that "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Batyukova*, 994 F.3d at 726 (quoting *Wesby*, 138 S. Ct. at 590). "This second approach is reserved for only rare, 'obvious cases.'" *Rombach*, No. 2020-30554, 2021 WL 2944809, at *6.

Here, it was not clearly established that Defendants' actions amounted to a constitutional violation. Defendants made several efforts throughout their shift to have Guzman removed from the holding cell by delegating the task to officers under their command. Exhibit C at 95:10–95:15. When Sturgis and West finished their shift, they reasonably believed that Guzman had been removed from the holding cell and returned to his housing assignment. Exhibit C at 90:4–90:15. Thus, when Sturgis and West concluded their shift, they were no longer aware of Guzman being in the holding cell. To the extent the Court were to find that Defendants' actions violated Guzman's constitutional rights, a reasonable person would not have known that such amount to deliberate indifference according to the case law of the Fifth Circuit and the Supreme Court. *See Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir.2004) (prison supervisory officials reasonably discharge their duty to protect inmates when they administratively delegate matters to appropriate individuals or departments). Therefore, Defendants West and Sturgis are entitled to qualified immunity and Guzman's claims should be dismissed with prejudice.

### d.  Defendants' actions were objectively reasonable.

Finally, even if Defendants' actions violated a clearly established constitutional right, the Court still must determine the objective reasonableness of those actions in light of the law as it existed at the time the conduct occurred and in light of the information that they possessed.

*Anderson*, 483 U.S. at 641 (1987); *see also Valencia*, 981 F.2d at 1448. The Supreme Court addressed this prong of the qualified immunity inquiry in *Harlow*: "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." 457 U.S. at 818.

"[W]hen the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." *Thompson*, 245 F.3d at 459–60 (citation omitted). Thus, if the reasonable officials could differ on the lawfulness of Defendants' actions, then they are entitled to qualified immunity. *See Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539 550 (5th Cir. 1997).

There is no doubt that Defendants' actions were objectively reasonable. It was reasonable for Defendants to delegate the task of removing Guzman from the holding cell to officers under their command when, as shift supervisors assigned to 12 building, it was their responsibility to respond to the numerous calls for additional staff that occurred that day which kept them from doing it themselves. Exhibit C at 95:10–95:15; 120:13–121:6. Additionally, when the officers finished their shift, they reasonably believed that Guzman had been removed from the holding cell and was taken back to his housing area because the light was off in the room where Guzman was, and the door was closed. Exhibit C at 90:4–90:15. It was reasonable for Defendants to hold this belief because they had delegated the task to other officers and it is not common for doors to rooms not being used to be left open, and when a room is not being used, the door to it should be secured. Exhibit A at 50:25–51:2; Exhibit C at 90:6–90:12; Exhibit D at 36:18–38:2. At the conclusion of their shift, there were no reasons for Defendants to "believe that [Guzman] was not where he was

supposed to be." Exhibit C at 125:7–125:9. Therefore, Defendants are entitled to qualified immunity and Guzman's claims should be dismissed with prejudice.

**III.**
**CONCLUSION**

The competent summary judgment evidence demonstrates that Defendants Sturgis and West did not retaliate against Guzman or act with deliberate indifference in violation of Guzman's Eighth Amendment rights. Further, it was not clearly established that Defendants' actions amounted to a violation of Guzman's constitutional rights. Finally, Guzman failed to demonstrate that Defendants' actions were unreasonable in light of the circumstances that existed at the time; namely that the Defendants were the supervisors required to respond to numerous incidents occurring in their building, that Defendants delegated the task to other officers who also became busy responding to incidents, that Defendants reasonably believed Guzman had been removed from the holding cell and taken back to his housing area because the light was off in the room where Guzman was, and the door was closed. Therefore, because Guzman has failed to demonstrate a genuine issue of material fact regarding Defendants' entitlement to qualified immunity, Defendants request that judgment be granted in their favor and all claims brought against them be dismissed with prejudice.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil
Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense Division

21

/s/ Jason T. Bramow
**JASON T. BRAMOW**
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24101545
Southern District I.D. No. 3134903
Jason.Bramow@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Office (512) 463-2080/Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS
STURGIS AND WEST**

**NOTICE OF ELECTRONIC FILING**

I, **JASON T. BRAMOW**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true and correct copy of the above **Defendants Sturgis and West's Motion for Summary Judgment** in accordance with the Electronic Case Files System of the Southern District of Texas on August 4, 2021.

/s/ Jason T. Bramow
**JASON T. BRAMOW**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **JASON T. BRAMOW**, Assistant Attorney General of Texas, certify that a true and correct copy of the above **Defendants Sturgis and West's Motion for Summary Judgment** has been served on all counsel of record via the electronic filing system of the Southern District of Texas, on August 4, 2021.

/s/ Jason T. Bramow
**JASON T. BRAMOW**
Assistant Attorney General